UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LASALLE BANK NATIONAL ASSOCIATION, as Trustee for the registered holders of Commercial Mortgage Asset Trust, Commercial Mortgage Pass-Through Certificates, Series 1999-CI, <br><br> Plaintiff, <br> v. <br><br> THOMAS O. MUDD, III, <br><br> Defendant. | No. 03 C 1785 <br><br> Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, LaSalle Bank National Association, as Trustee for the registered holders of Commercial Mortgage Asset Trust, Commercial Mortgage Pass-Through Certificates, Series 1999-CI ("LaSalle"), filed suit against Defendant, Thomas O. Mudd, III ("Mudd"), alleging Mudd defaulted on a fraud guaranty. Presently before the Court is LaSalle's Motion for Summary Judgment.

## BACKGROUND

In August 1998, Container Corporation executed and delivered to Capital Company of America, LLC ("CCA") a mortgage note in the original principal amount of $3,250,000 for a loan in that amount. (Plaint.'s 56.1(a)(3) Statement ¶ 3). As security for the Note and the loan, Container executed and delivered to CCA a Mortgage, Assignment of Leases and Rents and Security Agreement ("Mortgage") of the premises located at and commonly known as 1524 Walnut Street, Streator, Illinois (the "Premises"). (Id., ¶ 4). At the same time, Mudd executed and delivered to CCA a fraud guaranty in which Mudd guaranteed and agreed that he would be liable to CCA for fraud by himself or Container in connection with the loan. (Id., ¶¶ 5, 7).

In the Mortgage, Container assigned to CCA as mortgagee all of Container's rights in and to the leases of and rents from the Premises and agreed to hold the rents in an amount sufficient to discharge all current sums due to the Mortgagee "in trust for the benefit of Mortgagee." (Plaint.'s 56.1(a)(3) Statement ¶ 8). Container also agreed not to collect any rents more than one month in advance. (Id., ¶ 9). Mudd executed the Mortgage on Container's behalf. (Id., ¶ 10).

In early December 1998, CCA assigned the Mortgage and the Note to LaSalle, pursuant to an Assignment of Mortgage, Assignment of Leases and Rents and Security Agreement. (Plaint.'s 56.1(a)(3) Statement ¶ 11). The Mortgage required Container to hold the prepaid rents which it collected "in trust for the benefit of Mortgagee." (Id., ¶ 30). Container still could not collect any rents more than one month in advance. (Id., ¶ 31).

Container defaulted on the Note and the Mortgage by failing to make the monthly payment due under the Note on November 1, 2001. As a result of the default, the Note became immediately due and payable. Since that time, Container has not made any payments on the Note. (Plaint.'s 56.1(a)(3) Statement ¶ 12). By reason of Container's default under the Note and Mortgage, LaSalle was entitled to foreclose the Mortgage and obtain the appointment of a receiver; and, upon the appointment of a receiver, the rents from the Premises would be paid to the receiver. (Id., ¶ 13).

From 1998 through the time when Mudd was no longer involved with the Premises, there were two tenants of the Premises, commonly referred to as Anchor Glass and Quad City. (Plaint.'s 56.1(a)(3) Statement ¶ 14). Mudd contacted both tenants to discuss prepayment of their rent. (Id., ¶ 15). As a result of Mudd's discussions with the tenants, both tenants prepaid their rent. (Id., ¶ 16). In November 2001, the tenants prepaid rent in the amount of $1,280,116.55. (Id., ¶¶ 17-18). From the prepaid rents, among other things, Mudd made: a total investment in Enron of $734,011.00; a

payment of $133,000.00 for "bank obligations"; a payment of $19,591.00 for "accounting & legal"; a payment of $5,677.00 for "office rent"; and a payment of $38,068.00 for "management fees." (Id., ¶¶ 23-27). The stock that Mudd purchased with the prepaid rents ultimately became worthless. (Id., ¶ 20).

After Mudd collected the prepaid rents, there was no other source of funds with which to make payments on the Mortgage. (Plaint.'s 56.1(a)(3) Statement ¶ 28). Mudd never sought LaSalle's consent to collect prepaid rents or to negotiate for prepayment. (Id., ¶ 29).

Container failed to make any payments on the Note and the Mortgage since its receipt of the prepaid rents. (Plaint.'s 56.1(a)(3) Statement ¶ 32). Container failed to pay amounts of approximately $84,731.00 due to J.F. Ahern & Co. ("Ahern") for work which Ahern did on the Premises. Subsequently, Ahern asserted a mechanics lien on the premises which LaSalle settled by paying Ahern $35,000. (Id., ¶¶ 33-34).

LaSalle commenced an action to foreclose the Mortgage and, in June 2002, obtained the appointment of a receiver. Container failed to turn over to the receiver the prepaid rents which it had collected. (Plaint.'s 56.1(a)(3) Statement ¶ 35). As a result of Mudd's collecting prepayments of their rents from the tenants, LaSalle had to advance to the receiver funds necessary for operation and management of the Premises. (Id., ¶ 26). At the conclusion of the foreclosure, there was a deficiency after the sale in the amount of $3,102,707.29. (Id., ¶ 37). LaSalle has been unable to collect anything on the judgment. (Id., ¶38).

3

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001) (*Greer*).

LaSalle argues that Mudd is liable under the Guaranty for constructive fraud in the amount of $892,269.00, based on the disbursements Mudd made with the prepaid rents which Mudd collected were not used for expenses in connection with the Premises.

Mudd argues that LaSalle does not have the right to enforce the Guaranty because it was specifically assigned to CCA and not LaSalle. However, the Guaranty provides, "The provisions of this Agreement will bind and benefit the heirs, executors, administrators, legal representatives, nominees, successors and assigns of Guarantor and Lender. 'Lender' as used herein shall mean each holder of the Note and its successors and assigns." In early December of 1998, CCA assigned the Mortgage and the Note to LaSalle, pursuant to the Mortgage. The language of the Guaranty demonstrates that LaSalle, as lender and assign, is a beneficiary of the Guaranty. Therefore, LaSalle is entitled to enforce the Guaranty.

Mudd also argues that LaSalle's motion fails because LaSalle must prove actual fraud or an intentional misrepresentation, not constructive fraud.

Paragraph 1 of the Guaranty states, "Guarantor hereby guarantees and agrees that it shall be liable to Lender for **fraud or intentional misrepresentation** by Guarantor . . ." (Emphasis added). The Guaranty does not limit liability to a specific type of fraud; therefore, liability for fraud under the Guaranty may be actual or constructive. *See LaSalle Nat'l. Trust v. Bd. of Dirs. of the 1100 Lake Shore Drive Condominium*, 287 Ill. App. 3d 449, 455 (1997) (*Lasalle Nat'l Trust*). Accordingly, LaSalle need not prove actual fraud or an intentional misrepresentation.

Constructive fraud is a well-established doctrine in Illinois. Constructive fraud is "any act, statement or omission that amounts to positive fraud or that courts construe as fraud because of its detrimental effect upon public interests and public or private confidence." *Beaton & Assoc., Ltd. v. Joslyn Man. & Supply Co.*, 159 Ill. App. 3d 834, 843-44 (1987) (*Beaton*). Where there is a breach of legal duty arising out of a fiduciary relationship, a presumption of constructive fraud arises. Constructive fraud does not require actual dishonesty or intent to deceive; breach of fiduciary duty is enough. *LaSalle Nat'l. Trust*, 287 Ill. App. 3d at 455, 457.

LaSalle argues that the Mortgage created an express trust, and Mudd breached its fiduciary duty by using the prepaid rents for his own purposes. Mudd argues that a trust was not created; thus, he did not breach any fiduciary duty by dissipating the prepaid rents.

An express trust is a trust which is created in express terms in a written instrument. *Price v. State*, 79 Ill. App. 3d 143, 147 (1979). The clearest indication of the parties' intent is the language of the mortgage itself. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 394 (7th Cir. 2003). Mudd cites to *Judd v. First Federal Savings & Loan Ass'n of Indianapolis*, 710 F.2d

5

1237 (7th Cir. 1983) (*Judd*). In *Judd*, the Seventh Circuit affirmed the district court's finding that a fiduciary relationship was not created in a mortgage "despite the scattered use of the words 'trust' and 'trustee' and the phrase 'in trust'." *Judd*, 710 F.3d at 1241. Here, as distinguished from *Judd*, the Mortgage expressly stated that Mudd would hold the rents in an amount sufficient to discharge all current sums due to the Mortgagee "*in trust* for the benefit of Mortgagee." (Emphasis added). Mudd's interpretation "would contradict the well-settled rules of contract construction, that all provisions are presumed to have been inserted for a purpose, and that a contract should be interpreted to give meaning and effect to each provision contained therein." *Dolezal v. Plastic & Reconstructive Surgery*, 266 Ill. App. 3d 1070, 1081 (1994).

Mudd had a fiduciary duty, arising out of the express trust created by the Mortgage, to hold rents for the benefit of LaSalle. Mudd does not dispute that he collected and dissipated prepaid rents. These undisputed actions constitute a breach of Mudd's fiduciary duty and presume a claim for constructive fraud. *LaSalle Nat'l. Trust*, 287 Ill.App.3d at 455. Under the Guaranty, Mudd is liable for the constructive fraud.

## CONCLUSION

For the foregoing reasons, LaSalle's Motion for Summary Judgment is granted.

Dated: September 7, 2005

JOHN W. DARRAH
United States District Judge